

FILED
5/16/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
DM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America
  plaintiff

VS                                  19 CR 850

Sheldon Morales
  defendant

MOTION TO SUPPRESS

Coming before this honorable Court Sheldon Morales (Morales) and appearing Pro-Se for the express purpose and limited to so move this Court to suppress the package and the contents which was taken from the United Parcel Service (UPS) truck on March 1, 2019. This motion as submitted with respect to Rule 12(b)(c) of the Federal Rules and Codes of Criminal Procdure. The defendant intends to prove that the police illegally seized and searched the parcel and more likely than not compromised the integrity of the contents, thus violating the defendant's Fourth Amendment's Protection of an expectation of privacy.

The defendant Morales is charged with a violation of Title 21 Section 841(a)(1) and (b)(1)(A)(iii). The United States Attorney allege that Sheldon Morales did attempt to knowingly and intentionally possess with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance; a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenyethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance; and a mixute and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, pursuant to 21 U.S.C. §846. and that the defendant conspired to distribute and possess. The contents of the package (parcel), which the defendant now moves to suppress is the parcel which is material to the featured complaint.

1

The defendant additionally requests this Court to decide the motion in accordance with Rule 12(d) of the Federal Rules and Codes of Criminal Procedure as a motion to be decided before the trial and not defer the ruling. The defendant requests the Court to decide the motion without oral arguement and rely on filed written responses of any or all parties.

## REPORT OF INVESTIGATION

On March 2, 2019, Mikhail Geyer, task force officer, (TFO) of the Chicago Division of the United States Department of Justice (DEA) did author and file a report on investigation (Bates Stamped reports 002_000007-10, Internal File No. 11-17-0222, and pages 1-4, and did sign the reports as an agent on March 10, 2019. This report was approved by supervisor David M. Reynolds (GS) on March 20, 2019. The report contains references to telephone calls or wire intercepts which had been approved by Rebecca R. Pallmeyer as a warrant on February 17, 2019 and continued by acting Cheif Judge Mathew F. Kennelly.(Bates Stamped; Wires_002-000001 and Wires_003-000001)).

Page four of this document contain the actual reports.

The report of investigation is reiterated in the affadavit of the Criminal Complaint (19CR850) on page 18, paragraph 28,29, and 30 and is subtitles "Law Enforcment takes control of package intended for the Davis Street Address in Evanston, Illinois" (19-CR-850, document 1, Filed 11/7/19)

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 4

| | | |
|---|---|---|
| 1. Program Code | 2. Cross File / Related Files | 3. File No. I1-17-0222 |
| | | 4. G-DEP Identifier YNH1G |
| 5. By: Mikhail Geyer, TFO At: CHICAGO, IL DIVISION OFFICE | | 6. File Title MORALES, Darius |
| | | 8. Date Prepared 03-02-2019 |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | |

9. Other Officers: DEA Group 48: TFOs O'Malley, Watts, Clark, Jacobs, Davis, (Sgt.) Thompson, Kush, GS Reynolds. Evanston PD: Det. Kleinpaste & Det. Tortorello

10. Report Re: Acquisition of exhibit 65 and 66 on 03/01/2019 in the 9100blk of Ewing Evanston IL 60203 from UPS (Exhibits were destined for S. MORALES)

### SYNOPSIS

On March 1, 2019 members of DEA Group 48 seized exhibits 65 (approx. 12 pounds of methamphetamine) and 66 (approx. 892.4 grams of suspect heroin) from UPS in the 9100 block of Ewing Avenue Evanston, Illinois that was destined for 3300 Davis Street Evanston, Illinois. Information

### DETAILS

1. In furtherance of Operation Lake Effect. On 02/12/2018 at approximately 3:31p.m. a Title III order aimed at intercepting wired communications from Sheldon MORALES (872-223-1853) Reference all previous DEA-6 Reports of Investigations written under this file title and file number. Reference should also be made to intercepted telephone calls/text messages from SHELDON MORALES' Target Phone 2 under this same file title and number. Reference the following (not limited to) call sessions for further information: 797, 1335, 1339, 1499, 2703, and 2730.

2. On March 1, 2019, at approximately 9:30am DEA Group 48 and members of the Evanston Police Department set up surveillance in the area of 3300 Davis Street in Evanston, Illinois based on information collected from wire intercepts. Later that day at approximately 9:50am while conducting surveillance, TFO James DAVIS observed a United States Parcel ("UPS") truck in the 9100 block Ewing Avenue, which is around the corner from the 3300 Davis Street address. TFO DAVIS and TFO GEYER approached the UPS driver (Michael Clark DOB 09/17/1959) and identified themselves as law

| 11. Distribution: Division District Other | 12. Signature (Agent) /s/ Mikhail Geyer, TFO | 13. Date 03-10-2019 |
|---|---|---|
| | 14. Approved (Name and Title) /s/ David M Reynolds, GS | 15. Date 03-20-2019 |

DEA Form - 6
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition dated 8/94 may be used.

REPORTS_002-000007

| U.S. Department of Justice<br>Drug Enforcement Administration | 1. File No.<br>I1-17-0222 | 2. G-DEP Identifier<br>YNH1G |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>(Continuation) | 3. File Title<br>MORALES, Darius | |
| 4. Page 2 of 4 | 6. Date Prepared<br>03-02-2019 | |
| 5. Program Code | | |

enforcement personnel and asked the driver if he had any planned deliveries to 3300 Davis Street of packages weighing approximately ten pounds or more. The driver responded affirmatively. Law enforcement officers asked the driver to turn over the package to law enforcement. The driver consulted with individuals at UPS and turned over the package, **Subject Parcel 1**, to the officers. The driver was provided with a DEA 12 receipt indicating the transfer of **Subject Parcel 1**.

3. TFO Geyer inspected the **Subject Parcel 1**. According to UPS the **Subject Parcel 1** was mailed on February 28, 2019, from Los Angeles, California and is addressed to "Patrick Miller at 3300 Davis Street, Evanston, IL 60203," with a return address of "Karen, Johnny's Commercial Kitchen, 716 S 6th St., Las Vegas, NV 89101," and weighs approximately 17 pounds. TFO Geyer observed several characteristics about the **Subject Parcel 1** that, based on training and experience, can be consistent with parcels containing a controlled substance. TFO Geyer ran the sender and recipient names and addresses on the **Subject Parcel 1** through law enforcement databases. While the purported sender address is associated with the business in Las Vegas, package was sent from Los Angeles by "Karen." Additionally, the purported recipient name does not match with any names listed at the recipient address. Moreover, S. MORALES has multiple vehicles registered in his name listing the 3300 Davis Street address. Based on training and experience, fictitious sender or receiver names, and fictitious return addresses, can indicate that the sender or receiver does not want to be associated with the parcel.

4. Later that day, TFO Geyer arranged for Niles Police Department Canine Officer Chris Koch and his canine partner, "Ace," to meet with me and examine **Subject Parcel 1** at the parking lot adjacent to the UPS Store located at 848 Dodge Avenue in Evanston, Illinois. According to the Canine Officer, Ace is certified annually by TOPS Kennel as a narcotics dog. Ace was most recently re-certified on June 15, 2018. Ace is trained to sniff buildings, vehicles, envelopes, and wrapped parcels to detect the odors of heroin, cocaine, marijuana, and methamphetamine that could be contained inside. Ace is also trained to indicate the presence of such substances or their scents by alerting to the item he is sniffing. Officer Koch arranged a controlled substance detection test by placing **Subject Parcel 1** among approximately 3 other unmarked police vehicles in the aforementioned

DEA Form -6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| U.S. Department of Justice<br>Drug Enforcement Administration | 1. File No.<br>I1-17-0222 | 2. G-DEP Identifier<br>YNH1G |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>(Continuation) | 3. File Title<br>MORALES, Darius | |
| 4.<br>Page 3 of 4 | 6. Date Prepared<br>03-02-2019 | |
| 5. Program Code | | |

parking lot. Law Enforcement Officers then witnessed Ace examine the parcels and observed Ace alert by digging and scratching on **Subject Parcel 1** with his front paws (the alert occurred on March 1, 2019 at approximately 1:05pm). Ace did not alert to any of the vehicles. The Canine Officer informed me that Ace's actions indicated the odor of narcotics and/or controlled substances in **Subject Parcel 1**.

5. Later that day at approximately 4:47pm TFO Geyer met with US Magistrate Judge Maria VALDEZ and attained a signed search warrant for the search of Subject Parcel 1. Law Enforcement promptly opened Subject Parcel 1 and discovered the following contents: one additional smaller box containing approximately 12 pounds of methamphetamine packaged inside of a large clear plastic bag (exhibit 65) and approximately 892.4 grams of suspect heroin wrapped up plastic wrap (exhibit 66). TFO Watts turned all of the items over to Evanston Detectives Kleinpaste and Shanas for inventory. Evanston Police Detective Kleinpaste and TFO Geyer field tested the methamphetamine with positive results. The suspect heroin was not tested due to the possible presence of fentanyl. All items were inventoried into the Evanston Police Department Property Office for safe keeping under case number 19-1480 (See attached Evanston Police Evidence Technician Report for details).

6. On March 6, 2019 at approximately 10:00am TFO Geyer retrieved exhibit 65 and exhibit 66 from the Evanston Police Property Office. Later that same day TFO Geyer and SA Elvey turned over exhibit 65 and exhibit 66 over to the DEA North Central Laboratory (See DEA 7 for details).

CUSTODY OF EVIDENCE

DEA SENSITIVE
Drug Enforcement Administration

DEA Form - 6a
(Jul. 1996)

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| | | |
|---|---|---|
| U.S. Department of Justice<br>Drug Enforcement Administration | 1. File No.<br>I1-17-0222 | 2. G-DEP Identifier<br>YNH1G |
| **REPORT OF INVESTIGATION**<br>(Continuation) | 3. File Title<br>MORALES, Darius | |
| 4. Page 4 of 4 | 6. Date Prepared<br>03-02-2019 | |
| 5. Program Code | | |

**Exhibit #65** is one (1) clear plastic bag containing a hard clear/white substance, suspect methamphetamine, later labeled **Exhibit #65** (approximately 12 pounds). On March 1, 2019, TFO GEYER retrieved **Exhibit #65** from UPS in the 9100 block of Ewing Evanston, Illinois and transferred custody over to TFO WATTS. TFO WATTS transferred **Exhibit #65** to Det. J. KLEINPASTE (Evanston PD) who inventoried **Exhibit #65** pursuant to Evanston Police Department policy and procedure under case number 19-1480. On March 6, 2019 TFO GEYER retrieved **Exhibit #65** from the Evanston Police Department and transferred **Exhibit #65** over to the DEA North Central Laboratory for testing.

**Exhibit #66** is one (1) hard like substance wrapped in plastic wrap, suspect heroin, later labeled **Exhibit #66** (approximately 892.4 grams). On March 1, 2019, TFO GEYER retrieved **Exhibit #66** from UPS in the 9100 block of Ewing Evanston, Illinois and transferred custody over to TFO WATTS. TFO WATTS transferred **Exhibit #66** to Det. J. KLEINPASTE (Evanston PD) who inventoried **Exhibit #66** pursuant to Evanston Police Department policy and procedure under case number 19-1480. On March 6, 2019 TFO GEYER retrieved **Exhibit #66** from the Evanston Police Department and transferred **Exhibit #66** over to the DEA North Central Laboratory for testing.

**INDEXING**

1. MORALES, Sheldon - NADDIS#8986459. M/B DOB: 11-22-1981, cellular phone number 872-223-1853.

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

## LEGAL ANALYSIS

A "seizure" of a property within the meaning of the Fourth Amendment occurs when there is some meaningful interferance with an individual's possessory interest in that property. This definition follows from the oft-repeated definition of the "seizure" of a person within that meaning of the Fourth Amendment, that is meaningful interferance, however brief, with anm individuals freedom of movement (United States Supreme Court Digest, lawyers' edition section 2) (United States v. Jacobsen, 466 US 109,) and a (search within the meaning of the Fourth Amendment occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. (id)

When a wrapped parcel is delivered to a private freight carrier, it is unquestionably and "effect" within the meaning of the Fourth Amendment. Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy, and warrantless searches of such effects are presumably unreasonable. S.Ct. Digest, section 8-25 United States v. Jacobsen, 466 US 115 (1984), Walter v. United States, 447 US 649 (1980), specifying e.g. "a private party had opened a misdirected carton and found (contraband) and turned it over to the FBI. The conviction was reversed by the Supreme Court).

The Fourth Amendment contains searchs and seizures that are not justified under the circumstances, See Maryland v. King, 569 US 435, (2013). Searchs and seizures are conducted without a warrant only to a few specially established and well deliniated exceptions, (citing Arizona v. Gant, 556 US 332, (2009)(Quoting Katz v. United States, 389 US 347 (1967). Those exceptions could be defined as exigent circumstances or exceptional.

Colonial Americans were humiliated by the practice of the Revenue Officers, empowering their discretion to search places for smuggled goods as the practice placed "the liberty of every man in the land of every petty officer, Boyd v. United States, 116 US 625, (1886). "Then and There" said John Adams, Then and there was the first scene of the first act of

opposition to the arbitrary claims of Great Britain, then and there was the child of independance born, Boston February 1761, Boyd at 116 Supra. Clearly the enactment of the Fourth Amendment's purpose was to protect the rights of the individual and his possessions. The exigent circumstances and the rules of exception would be exceptional.

One of the exceptions is a showing that for a "reasonable probability that the evidence in question would have been discovered by lawful means" United States v. Johnson, 777 F.3d 1270 (2015 S.D. Fla. 8/31/17) and another is the recognition that a situation exist where the occupant of a residence is in danger or there is imminent danger. Michgan v. Fisher, 588 US 45 (2009), or when the police are in "hot pursuit" of a fleeing suspect, United States v. Santana, 427 US 38 (1976)., or a risk that a suspect may escape, see Minnesota v. Olsen, 495 US 91 (1990), or to prevent the destruction of evidence, Kentucky v. King, 131 S. Ct. 1849 (2011). It is important when appraising the circumstances which created the warrantless action to seize was justified "we focus not only on the moment that the police made the decision to make the warrantless act. See United States v. Patino, 830 F.2d at 1416 Supra. (quoting United States v. Rosselli, 506 F.2d 627-30(7th Cir. 1974)(Stevens J.).

The element of probable cause must be considered as a circumstance to seize without a warrant, reasonable suspicion is a commonsense non-technical concept that deals with the factual and practicle considerations of everyday life on which reasonable and prudent men, not legal techicians act. United States v. Wanjiku, 919 F.3d 472-88(7th Cir. 2019)(quoting Ornelas v. United States, 517 US 690 (1996). Reasonable suspician must account for the totality of the circumstance and requires more than a hunch but less than the preponderance of the evidence, United States v. Reedy, 989 F.3d 548-52(7th Cir. 2021)(Citation omitted) Citing United States v. Williams, 18-CR-149 (2021). Defendant Williams had described the package with route numbers, orgin and receivership in detail to the co-defendant, on a recorded jail phone, creating the probable cause.

Additionally an item or parcel could be considered "abandoned" and produce the exception to seize, as the owner had relinquished his property right to the item. United States v. Pitts, 322 F.3d 449-56 (7th Cir. 2003)

8

When a warrantless search or seizure has occurred, the government bears the burden of proving compliance with the Fourth Amendment by a preponderance of the evidence. United States v. Peters, 743 F.3d 1113-16 (7th Cir. 2014); United States v. Garcia, Garcia, 633 F.3d 608-12 (7th Cir. 2011).

## FACTUAL BASIS

According to the Police Report, authored by Mikhail Geyer, Task Force Officer (TFO), at the Chicago Division Office of the Department of Justice and specifically the Drug Enforcement Administration (DEA) on March 1, 2019 at 9:50AM a package was taken from the United parcel Service (UPS) vehicle, and turned over to agent Geyer , Document 1, pg. 18, para. 28. The driver did consent to agent Geyer's request after consulting with his (UPS) superiors (Bates Stamped: Reports_002-000007, para. 2 and continuing to Reports_002-000008, found herein as page and ). The package was not addressed to agent Geyer and was sealed. when the wrapped parcel in this case was delivered to the private freight carrier, it was unquestionably an "effect" within the meaning of the Fourth Amendment. Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy. United States v. Jacobsen, 466 US 114. United States v. Vang (E.D. Wisc 2017). No search warrant was obtained for the seizure of the parcel, in which was addressed to "Patrick Miller" at 3300 Davis Street, Evanston Illinois 60203. There is reason to believe that Sheldon Morales the target of the investigation, may have or could have resided at the Davis Street address. Agent Geyer, through wire taps, could have known that a package was arriving which more likely than not, had alerted him to the UPS truck. If the parcel had been delivered to the address, it would have been accepted by the resident or refused. If the package had been refused, it may have been considered abandoned, and would no longer be entitled to Fourth Amendment Protection. "No person can have a reasonable expectation of privacy in an item that has been abandoned. United States v. Basinski, 226 F.3d 829-36 (7th Cir. 2000). It would also be important that the resident of Davis Street would have accepted the parcel the police may have been able to prove possession, but neither of these events took place, and the reasonable expectation of privacy of the Fourth Amendment was intact.

9

After agent Geyer and Davis took possession of the package, they transported the package to 848 Dodge St. Evanston Ill., the site of a UPS "store" and arranged for the Niles police department to conduct a canine examination. The examination was recorded as taking place at 1:05PM on March 1, 2019. This examination was over three (3) hours after the seizure. The report does not acknowledge if the package was opened or remained sealed. It is important that only one package was offered to the canine and that a warrant to search the package was obtained at 4:47PM on March 1, 2019. The canine did verify that the package contained narcotics. When the package was opened and the contents displayed, it was found that the larger box contained a smaller box inside, and the narcotics were sealed in plastic wrappings, Reports_002_000009 pg. 5 etc. Canine partner "ACE" had the single parcel to examine which had traveled over 2,000 miles from los Angeles. No leaks or damage to the parcel was noted. The warrant obtained from the U.S. Court, Judge Valdez, on March 1, 2019 at 4:47PM is a warrant to search UPS next day air package as #12N7M3T801016448026 and assigned case number 142, Bearing the recipient as "Patrick Miller" at 3300 Davis St., Evanston Ill 60203, and a senders address as H. Brown, 216000 Bloomfield ave, #23, Hawiian Gardens, Ca. 90716 at a cost of $40 .15 weighting 1 pound 8 ounces. This information differs greatly from the subject parcel which is the subject of the report. The police report and the warrant agree that the recipient is "Patrick Miller" of 3300 Davis St. in Evanston Il. and does match the UPS package ID, but the weight of the package seized was 11±1 pounds heavier than the one described to U.S. Magistrate Judge Maria Valdez. It was also larger. The disparity is not a result of scrupulous accuracy.

## CONTROLLING CASES

Considering United States v. Vang Supra, the defendant introduced a motion to supress a United States Postal Service package which the Postal inspector had "flagged" for investigation. The USPS facility was in Milwaukee, WI. The agent (inspector)(Metke) did attempt delivery to the recipient address, at which time the package was denied delivery. The agent promptly opened the sealed package finding narcotics. The Seventh Circuit granted a suppression of the package, based on the fact that the intrusion was inconsistent with innocent packages and was not excluded from the Fourth Amendment protections.

In trhe United States v. Penass (2007 US Dist LEXIS 67611), the defendant Penass was suspected of conspiring to possess and distribute marijuana (Contraband) by receiving packages at the Menominee Gas Company in Keshena, WI. FBI agent (Michael Sasse) did enter into an agreement with Dale Nikolay, and employee of the United States Postal Service (USPS) in Green Bay Wisconsin. Nikilay was to notify agent Sasse if any packages arrived for delivery to Penass at the Gas Company. On March 9, 2006 Nikolay advised Sasse that he was in custody of a package and had opened it, and saw what appeared to be a brick of marijuana. The package was sealed and a6anine was brought in and found the marijuana. Nikolay did work as an agent for the government. The court found that there was sufficient evidence for detaining the package, and granted the suppression of the package.

The Supreme Court reversed the conviction of William Walter, Walter v. United States, 447 US 649, of shipping obsecene films (contraband).

After 12 large cartons that had been shipped by private carrier from Florida to Georgia were mistakenly delivered to L'eggs Products Inc., rather than to leggs Inc., the actual recipient. The employees of L'eggs opened the cartons and discovered that the containers contained individual boxes of film, each of which bore a drawing suggesting homosexuality and a description of each film. The employees of L'eggs contacted the FBI -and the FBI took custody of the containers. The employees of L'eggs had been unable to view the films with the naked eye because of the size of the films. Subsequently the films were viewed by the FBI agents on a projector. Ultimately, individuals who had been viewing of the films, did not change the nature of the search and did not constitute an additional search subject to the warrant requirement of the Fourth Amendment. The packages were suppressed.

## SUMMARY

The protection granted from the Fourth Amendment has certain exigent circumstances which would allow the police or law enforcement to seize "person effects" without a warrant.

Considering the actions and the environment of agent Geyer on March 1, 2019, there was no exigent circumstances. If the package would have

11

been delivered, it is possible that it would have been denied and no longer protected by the Fourth Amendment and allowing for a warrantless search. It is also possible that the package would have delivered to the residence or then the package may have been returned to the sender. The package had been taken from the UPS driver.

There is no evidence to suggest that the parcel contained dangerous materials or that the general public was in danger.

The police were not in "Hot Pursuit" at the time the parcel was seized by agent Geyer.

The element was never established nor could have been at 9:50AM but by 11:15AM using wiretap, there may have been a reasonable suspician which mat have led to probable cause (19CR850, Doc 1, 11/7/19 Pg. 19, 31) which was over 1 hour after the capture of the parcel.

"These exclusionary rules were fashioned 'to prevent, not repair' and their target is official misconduct." (Coolidge v. New Hampshire, 403 US 443 (1971)(Quoting Elkins v. United States, 364 US 206 (1960).

Agent Geyer requested from the UPS driver to "give" him a package which was not addressed to him, but to the target address of the invest-igation. Presenting himself as an agent of the United States Law Enforcement Community. This act more likely than not created a certain intimidation and the driver notified his superiors. Agent Geyer is a veteran agent and should know the law. Agent Geyer has a pending civil action against him for excessive force (1).

A few hours later, A canine unit was employed to examine the Parcel, and after being in agent Geyers' possession. Narcotics were detected, and a warrant was issued at 4:47PM on March 1, 2019. The warrant contained conflicting information. Only 8 months after the verification of the narcotics contained in the parcel, Defendant, Sheldon Morales, was arrested.

The narcotics were attributed to Sheldon Morales. A violation of Defendant Sheldon Morales' reasonable expectation of privacy has been violated. United States v. Koenig 856 F.2d 843-46 (7th Cir. 1988), it is more likely than not agent Geyer's purpose to demonstrate that the narcotics found would have been in control of the defendant. United States v. Pitts, 322 F.3d 449, 57-59 (7th Cir. 2012). This prejudice was driven by agent

12

Geyer's lack of respect for the rights of the defendant.

The defendant requests that this Honorable Court suppress the parcel now identified as UPS #1ZN7M3T80101648026 and described as exhibit 65 and 66 in the complaint. The aquisition and subsequent examination violated defendant Sheldon Morales' Fourth Amendment rights.

_____
Sheldon Morales

(1) Ronald Louden has filed a civil complaint against agent Mikhail Geyer and Ken Carter for perpetrating a fraud in the event of gaining an arrest and for allegedly taseing him and excessive force, on April 20, 2021.

THE REMAINDER OF THIS PAGE LEFT BLANK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
|   Plaintiff | ) | |
| | ) | |
| v. | ) | 19 CR 850 |
| | ) | |
| Sheldon Morales | ) | |
|   Defendant | ) | |

AFFIDAVIT IN SUPPORT
OF MOTION TO SUPPRESS

    In compliance with Rule 47 of the United States Criminal Codes and Rules, the Defendant and through his attorney does offer this affidavit in support of the motion to suppress.

    I, Sheldon Morales:

(1) Was arrested on November 15, 2019 by the United States Federal Police, subject to a warrant issued by the Seventh Circuit of the United States.
(2) Was at the time and place of the arrest, cooperative and offered no resistance.
(3) At the time and place of this arrest had no narcotics in my possession.
(4) Was at the time and place of my arrest not engaged in any criminal activity.
(5) Did not take material possession of any packages which are mentioned in the complaint and described as UPS package #1ZN7M3T80101648026.
(6) **Did** anticipate receiving, with property interest in, UPS package described in ATTACHMENT A of the Search and Seizure Warrant (UPS Package #1ZN7M3T80101648026, measuring approximately 11" x 6" x 8", weighs approximately 1 pound and 8 ounces.)
(7) Did have certain and binding familiarity of the address known as 3300 Davis Street, Evanston, Illinois.

    I swear or affirm under penalty of perjury under United States Laws that my answers on this affidavit are true and correct. (28 U.S.C. §1746; 18 U.S.C. §1623).

_May 15, 2022_
DATE

_Sheldon Morales_
SIGNATURE

AUSA Jeannice W. Appenteng, (312) 353-5357

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The UPS Next Day Air package bearing tracking number 1ZN7M3T80101648026, further described in Attachment A

Case Number: 

## SEARCH AND SEIZURE WARRANT

To: Mikhail Geyer and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of Illinois:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

See Attachment B

YOU ARE HEREBY COMMANDED to execute this warrant on or before __March 15, 2019__ in the daytime (6:00 a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: March 1, 2019  4:47 pm

_Maria Valdez_
_Judge's signature_

MARIA VALDEZ, U.S. Magistrate Judge
_Printed name and title_

City and State: Chicago, Illinois

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

The UPS Next Day Air package with tracking number 1ZN7M3T80101648026 bearing a recipient address of "Patrick Miller at 3300 Davis Street, Evanston, IL 60203," and a return address of "H. Brown, 216000 Bloomfield Ave. #23, Hawaiian Gardens, CA 90716." The **Subject Parcel** bears $40.15 in postage, measures approximately 11 inches x 6 inches x 8 inches, and weighs approximately 1 pound and 8 ounces.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence, instrumentalities and contraband concerning violation of Title 21, United States Code, Sections 841(a), 843 and 846, as follows:

1. Controlled substances.
2. Packaging for controlled substances.
3. United States currency, which constitutes evidence or instrumentalities of the subject offense.
4.
5. Items associated with controlled substances.
6. Items that identify the sender or receiver of the parcel.



