IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>SHELDON MORALES and<br>EDUARDO SANTANA<br><br>Defendants. | Case No. 19-CR-850<br><br>Judge Mary M. Rowland |

## ORDER

The Government moved *in limine* to admit evidence pursuant to Fed. R. Evid. 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978). After review of the Government's proffer, including the statements and transcripts, the Court grants the Government's motion to conditionally admit statements under *Santiago* [128].

## STATEMENT

The indictment alleges a conspiracy where Morales ordered packages of methamphetamine, fentanyl, and cocaine from a supplier in Mexico that were shipped via UPS to houses in the Evanston, Illinois area. According to the Government, the co-conspirators are Defendants Morales and Santana, and two non-defendant prisoners in Texas who initially brokered the transactions, Co-Conspirator A and Co-Conspirator B.

The Government's proffer describes evidence that the Government intends to present at trial to prove that a conspiracy to distribute illicit drugs existed and that Morales and Santana were members of the conspiracy. The Government seeks to admit various statements made by the defendants in conversations with non-defendant co-conspirators in furtherance of the conspiracy. Dkt 128 at 2–4. During the pretrial conference, Morales objected to the admission of certain phone conversations that occurred in February and March 2019 among Co-Conspirator A, Co-conspirator B and Morales, arguing that they do not show a conspiracy, but merely the existence of a buyer-seller relationship where Morales is the buyer.

"Under long-settled circuit law, a district court may admit co-conspirator statements conditionally based on the government's pretrial proffer, known in this

circuit as a 'Santiago proffer.'" *United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016). "Under Rule 801(d)(2)(E), co-conspirator statements are admissible against a defendant if the trial judge finds by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and the declarant were involved in the conspiracy, and (3) the statements were made during and in furtherance of the conspiracy." *Id.; see also United States v. Harris*, 585 F.3d 394, 398 (7th Cir. 2009). "In considering whether to admit alleged co-conspirator statements conditionally, the district court may consider the contents of the statements themselves"; however, "the record must also contain independent evidence corroborating the existence of the conspiracy and the participation of defendant and declarant." *Davis*, 845 F.3d at 286. Such evidence may be either direct or circumstantial. *See United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010). The Court may consider the relationship of the parties, their overt acts, and the totality of their conduct as proof of an agreement to conspire. *See United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000). In making its determination, the Court must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *Santiago*, 582 F.2d at 1143.

"Although every drug deal involves an unlawful agreement to exchange drugs, . . . a buyer-seller arrangement can't by itself be the basis of a conspiracy conviction because there is no common purpose." *United States v. Moreno*, 922 F.3d 787, 794 (7th Cir. 2019). "The line between a conspiracy and a mere buyer-seller relationship" is especially "difficult to discern." *United States v. Chavis,* 429 F.3d 662, 671 (7th Cir. 2005). In *United States v. Johnson,* 592 F.3d 749 (7th Cir. 2010), the Seventh Circuit supplied a non-exhaustive list of factors that distinguish a conspiracy from a non-conspiratorial buyer-seller relationship. These considerations include "sales on credit or consignment, an agreement to look for other customers, a payment of commission on sales, an indication that one party advised the other on the conduct of the other's business, or an agreement to warn of future threats to each other's business stemming from competitors or law-enforcement authorities." *Id.* at 755–56.

Taking into account this non-exhaustive list of considerations, the Court concludes that the Government has established that by a preponderance of the evidence that Defendant Morales was a member of the charged conspiracy between Co-Conspirators A and B rather than a mere buyer. Multiple *Johnson* factors are present in the calls the Government plans to introduce between Co-Conspirators A and B and Morales.

Namely, the conversations at issue between Co-conspirators A, B, and Morales show that all three individuals knew that Morales planned to resell the drugs and agreed that Morales would be selling to customers. For example, in a February 15, 2019 conversation between the three, Morales states, in reference to Co-Conspirators A and B sending samples of product, "I might like it and I might show my people what

2

it do" and "I wanna be able to go to my people and tell them 'Okay, this is this, and this is this. You feel me?" In the same conversation he admits that he "moves a lot of ice" when asking for the price from the co-conspirators. Later in the conversation, in reference to China (presumably heroin), he states "I don't have no people who's buying bricks of China, but I be . . . like I said, I be moving it, and . . . but I'll move it at a slow pace . . . you know what I'm saying, in a week, you know, just selling a hundred (100) grams here . . . shit like that." In a later conversation on February 20, 2019, the Co-Conspirators A and B asked Morales if he wanted to purchase the drugs, and Morales replied "We gon' do something wit the ice for sure," presumably, based on previous conversations informing the co-conspirators of his plan to sell the drugs.

On February 20, 2019 Morales and Co-conspirators A and B engaged in a separate conversation in which they are discussed the pricing for both "ice" and "China." In that conversation one co-conspirator states "We're just trying to make money, and I know you're trying to make money" … "We wanna work all…Like, uh there's enough food for all of us." This, alongside earlier conversations, clearly indicates that the co-conspirators were also aware that Morales had plans to resell the product.

These statements show that Morales and the co-conspirators agreed Morales would look for customers to distribute the drugs to. This is sufficient to show a conspiracy between Morales, Co-conspirator A, and Co-conspirator B because ultimately, "people in a buyer-seller relationship have not agreed to advance further distribution of drugs; people in conspiracies have." *United States v. Brown*, 726 F.3d 993 (7th Cir. 2013). *See United States v. Nunez*, 673 F.3d 661, 665–66 (7th Cir. 2012) (holding the line between a buyer-seller relationship and a conspiracy where a buyer-seller relationship is that of as a "purely arm's-length relationship" while a conspiracy exists where there is a "relationship of mutual assistance.")

Additionally, Co-conspirators A and B advised Morales on the conduct of their business. This is one of the primary factors outlined in *Johnson* to show a conspiracy. *Johnson,* 592 F.3d at 755. In the same February 15 phone call, one co-conspirator advises Morales that "if Morales needs some credit, Morales] will need to "work like three, four times." "After that," the conspirator "can provide a little bit of credit." At another point in the conversation a co-conspirator says "I told you…we need…right now, I give to you …whatever you need" but advises Morales that he "can [only] pay cash."
Lastly, mutual trust, basing a deal on credit is considered further evidence of a conspiracy. *See United States v. Bustamante*, 493 F.3d 879 (7th Cir. 2007) (holding that a level of mutual trust is a factor to show conspiracy). In a call on February 28, 2019 Morales states "that'll be cool, 'cause then you can see you can trust me and I, I, I already know I can trust you all" when discussing with a co-conspirator the purchase of product. The co-conspirator responds, "if I trust you, that's why I told my homeboy, 'yeah, send it," and then follows up "cause if I don't trust you, I don't, I don't

3

tell my homeboy send it." Given that the product was ultimately sent, this shows a trusting relationship between the parties. These statements support an inference that there was a conspiracy.

For these reasons, the Court accepts the Government's *Santiago* proffer and concludes that the co-conspirator statements set out by the Government are admissible pending the introduction of the evidence underlying the proffer.

E N T E R:

Dated: July 28, 2022

MARY M. ROWLAND
United States District Judge